THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TROY BROWN, Defendant-Appellant.

(No. 71-94;

Fifth District—June 28, 1972.

502

Paul Bradley, of Defender Project, of Mt. Vernon, (Kenneth L. Jones, of counsel,) for appellant.

Robert H. Rice, State's Attorney, of Belleville, for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Defendant was found guilty of armed robbery by a jury and was sentenced to a minimum of eight and a maximum of twenty years. On appeal he contends; (1) that he was deprived of effective representation since no counsel represented him at a pre-indictment line up from which the principal witness picked defendant, and which was held approximately seven months after the crime was committed, (2) that testimony of a prior inconsistent statement by the State's only witness was improperly excluded, (3) that his guilt was not proven beyond a reasonable doubt, and (4) that the sentence was excessive and not proportionate to the offense charged.

The State's witness testified that while he was serving as the sole attendant at a filling station at approximately 3:30 A.M. on September 29, 1969, he was robbed of $45.00 in cash and a gun, by two armed men. That this defendant, who at that time was in his presence approximately eight minutes, and whose face he had an opportunity to observe was the robber who took his gun from his person and the money from a drawer. The witness testified that the lighting was good, and made a positive identification in the court room at the trial. The witness also testified that he next saw the defendant when he picked the defendant out of a line up of six persons at the police station. On cross examination, the witness testified that the line up was held on April 31, 1970, described the defendant's clothing on the night of the robbery as well as the different clothing he was wearing in the line up. He further testified that defendant was the only person in the line up who resembled the robber in weight, size, and age, and the others did not fit the exact description of the man who robbed him. All the men in the line up were

Negroes, at least two of the others were within two to four inches of the height of the defendant and they were within approximately the same age group. None during the course of the line up were treated any differently than the rest.

At the time of the line up defendant had not been indicted and was not represented by counsel. Counsel for defendant moved to strike the identification evidence and to dismiss on the basis of the suggestiveness of the line up. The motion was denied and in the post trial motion defendant urged his constitutional rights had been violated in the line up. Defendant relies upon *U.S. v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 11 L.Ed.2d 1149., as amplified by *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 and *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 in which the Court said: "We have therefore concluded that confrontation is a 'critical state'; and that counsel is required at all confrontations." The State relies upon *People v. Palmer,* 41 Ill.2d 571, 244 N.E.2d 173 in which the Court declared that where the confrontation followed the arrest and was prior to the indictment, that *Wade* and *Gilbert, supra,* were not binding, and proceeded to find that the pretrial identification was not so suggestive and conducive to mistaken identification as to deny the defendant due process of law. The *Palmer, supra,* doctrine has been most recently reviewed, since briefs were filed in this case, upon the U.S. Supreme Court issuing *certiorari* in the case of *People v. Kirby,* 121 Ill.App.2d 323, 257 N.E.2d 589, in which the Illinois Court had applied the *Palmer* doctrine in a show up rather than a line up situation, and found that in view of the totality of the circumstances the defendant was not denied due process of law. The U.S. Supreme Court in *Kirby v. Illinois* 32 L.Ed.2d 411, 92 S.Ct. 1877, 40 United States Law Week 4607, affirmed, and declined to impose a *per se* exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever, and held that the *per se* exclusionary rule of *Wade* and *Gilbert, supra,* did not apply to confrontations before the "initiation of adversary judicial criminal proceedings—whether by formal charge, preliminary hearing, indictment, information or arraignment".

■■■ While a conviction resting upon an in-court identification which may be the product of an unnecessarily suggestive pretrial identification procedure is impermissible, not every "show-up" will be considered a denial of due process because of saving circumstances such as adequate opportunity on the part of the witness to view the defendant during the commission of the crime. (*People v. McCorry,* 51 Ill.2d 343, 282 N.E.2d 425.) The same principles apply to a "line up". We have reviewed the record and have concluded from it that the in-court identification was

positive, untainted, and independent, and that the pretrial identification was not so suggestive and conducive to mistaken identification as to deny defendant due process.

██ The general rule in regard to prior inconsistent statements is that such are admissible to impeach the witness's credibility and not to disprove or controvert the substance of his testimony. Consequently, it is not inadmissible as hearsay. (*People v. Moses,* 11 Ill.2d 84, 142 N.E.2d 1.) However, subsumed within the rule allowing such utilization of prior inconsistent statements is the basic requirement of fundamental fairness that a proper foundation must be laid in order to (1) protect the witness against unfair surprise and (2) permit diffusion of the inconsistency by explanation of the witness. *People v. Henry,* 47 Ill.2d 312, 265 N.E.2d 876; *People v. Moses, supra.*

██ The elements of laying a proper foundation have been variously stipulated. However, *Reilly Tar & Chemical Corp. v. Lewis,* 326 Ill.App. 84, 61 N.E.2d 290, adequately covers the factors normally included with the rule: (1) contradictory and inconsistent statements must in fact be present; (2) such must be material to the testimony of the witness; (3) such earlier statements must be read *or* shown to the witness; (4) the witness must deny making such earlier statements. Such statements must have the "reasonable tendency" to discredit the testimony of the witness on a material matter. *People v. Rainford,* 58 Ill.App.2d 312, 208 N.E.2d 314.

██ The sole prosecution witness, Walter Taylor on cross-examination in answer to the question "Did you have any doubt as to whether or not Troy Brown since that time was Troy Brown—was the proper person or not?" stated "I have no doubt in my mind". The defense called Shirley Brown, a sister of defendant, who testified she had attempted to investigate or to find witnesses in order to aid her brother, and had occasion to talk with Taylor concerning the alleged offense. When asked "What did Mr. Taylor tell you, if anything?" objection was made that no foundation had been laid, and the court sustained the objection, and directed counsel to "Lay a foundation". Subsequently she was asked "Was there ever expressed to you by the witness a doubt as to whether Troy Brown was the one?" to which an objection was sustained. The purpose of her examination was to inferentially impeach the credibility of the sole prosecution witness. After a thorough search of the record, it must be concluded that the transcript is absolutely bereft of any evidence that would even superficially fulfill the aforementioned requirements. Even assuming that an inconsistent statement which was material could be proved, the transcript shows no presentation of such inconsistent statement to the prosecution witness, with the concomitant result that the

witness had absolutely no opportunity to deny the veracity of such alleged inconsistencies. Defense counsel did not, in its cross-examination of Taylor, see fit to follow up its inquiry as to his certainty of defendant being the robber, by even suggesting that Taylor may at some time expressed any doubt on that point. Consequently, under the traditional view no foundation whatsoever was laid and the attempt to use Shirley Brown's testimony for impeachment purposes was correctly objected to and the objection was properly sustained by the court.

There is a line of precedent which liberalized the rules governing the requirements for laying a proper foundation. In *People v. Henry, supra,* the court decried such automatic application of traditional standards; even though the foundation standards had not been formally met, *if the questioning of the opposing counsel had been adequate to apprise the witness of such inconsistencies and allow him to protect himself against unfair surprise and permit explanation,* the purposes underlying the proper foundation requirement were sufficiently comported with. The court, quoting Wigmore, remarks that one must always remember that such a requirement of the traditional rule (that specific details of the prior inconsistency be enumerated) is not an "inherent requisite", but only a means to an end. Hence, to cling to "particular arbitrary formula" regardless of whether the witness understood the allusion is "impolitic and unjustified by principle". Wigmore's animadversion is duly justified by principle and by the more progressive courts; however, to conclude that the single, meager and ambiguous reference cited above adequately warns the witness (the focus of the liberal rule) is to engage in legal hyperbole and metaphysical subtleties. Consequently, though the prosecution would seem to have admitted its indecisive position on the admissibility under normal conditions of such evidence (it did not bother to cite any cases whatsoever), the requirement of proper foundation, recognized in *People v. Henry, supra,* requires its exclusion in the trial in question.

■■ The general rule in Illinois is that an appellate court will "not substitute its opinion for that of the jury unless it appears from a consideration of all the testimony that there is a reasonable doubt of the guilt of the accused or that the verdict is the result of passion or prejudice". (*People v. Siciliano,* 4 Ill.2d 581, 123 N.E.2d 725.) All the other cases cited by the prosecution stand for the same proposition.

■■ Insofar as the issue here raised is based on the availability of the testimony of Shirley Brown which was excluded, it is untenable. Even were the court to allow a very liberal interpretation of the groundwork or foundation rule, it is doubtful whether the testimony of Shirley Brown in itself because of the evident interest she has would be sufficient to

raise a "reasonable doubt". Unlike *People v. Mostafa*, 5 Ill.App.3d 158, 274 N.E.2d 846, where the court overturned a conviction based on the inherently suspect testimony of accomplice witnesses which had been contradicted, impeached and was totally uncorroborated (and was in the face of substantial evidence of the good character of the defendant in question), the case in question involved the eye-witness testimony of the victim of the crime, a solid, stable member of the community. Consequently, the conviction should be upheld, both on the theory that the evidence of Shirley Brown was barred by not laying a proper foundation and giving the witness an opportunity to deny the allegations. *People v. Johnson*, 123 Ill.App.2d 69, 259 N.E.2d 621, and on the theory that the identification did not create a reasonable doubt of defendant's guilt.

■■■ This defendant was 24 years old at the time of his trial in this cause. His contention that the sentence was not proportionate to the offense seems to be based on the fact that although weapons were involved, they were not used, nor was any physical brutality used against the attendant, and only $45 was taken in the robbery. At the hearing in mitigation and aggravation, defendant testified to prior convictions of armed robbery, burglary and assault, and apparently at the time of arrest was on parole from the State of Missouri on a charge of disturbing the peace. There is a general requirement that the judge take into consideration the youth, lack of violence, good family relations, stability (or lack thereof) of employment and previous criminal record. (*People v. Hogue*, 1 Ill.App.3d 881, 275 N.E.2d 193.) The only strong affirmative factor in defendant's favor according to the record is his steady employment (even during the period between indictment and trial). While we give emphasis to the possibility of rehabilitation, particularly of youthful offenders, defendant's record of continued criminal activity indicates that, at least until this conviction, defendant had not been willing to accept opportunities for rehabilitation, and that the probabilities of rehabilitation are not so imminent as to require action by this Court, and under the sentence imposed can be adequately explored and acted upon by the parole authorities.

We therefore affirm.

G. MORAN, P. J., and CREBS, J., concur.